AO 93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
District of Arizona

FILED ☒
RECEIVED ___   LODGED ___
COPY ___

SEP 2 3 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

In the Matter of the Search of
One Black in color Sentry Safe lock box

Case No. 24-2303MB

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property in the District of Arizona:

**As further described in Attachment A**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ___10/7/2024___ (*not to exceed 14 days*)
☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _any United States Magistrate Judge on criminal duty in the District of Arizona._

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C § 2705 (except for the delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days (*not exceed 30 days*) ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _9/23/2024 at 2:36pm_ _____
*Judge's signature*

City and state: _Yuma, Arizona_ _____   _Honorable James F. Metcalf, U.S. Magistrate Judge_
*Printed name and title*

## ATTACHMENT A

*Sentry Safe to be searched*

A black in color Sentry Safe was found on the premises with a nexus to the property at 269 S 16th Avenue, Yuma, Arizona 85364 (32.72254, -114.63916 during search warrant (24-5321MB). The exterior of the Sentry Safe locked box is colored in black, access keypad in the front with a latch black in color.



# **ATTACHMENT B**

## *Property to be seized*

1.      Any content inside the black Sentry Safe and anything that relates to violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii), including alien smuggling activity, and other communications and connections of other illicit activity. Individuals involved in illicit activity use these locked boxes/safes to conceal important information to include;

    a.  Books, records, receipts, notes, ledgers, invoices, and any other documentation related to alien smuggling transactions and activities including, but not limited to, documentary records and ledgers, customer lists, financial statements, real estate documents, and other evidence of financial transactions relating to obtaining, transferring, secreting or spending various sums of money made from engaging in alien smuggling and other illicit activities;

    b.  Maps reflecting smuggling routes, foreign fuel receipts, receipts reflecting travel to and from foreign countries, receipts pertaining to the purchase and registration of vehicles, receipts for modifications and repairs done to vehicle, and receipts for the purchase of portable radios, cellular phones, pagers, and firearms;

    c.  Records relating to the receipt, transportation, deposit, transfer, or distribution of money, including but not limited to, direct deposit confirmations, wire transfers, money orders, cashier's checks, check stubs, PayPal or other electronic money transfer services including, but not limited to, MoneyGram, MoneyPak, Green Dot, and Vanilla Reload, check or money order purchase receipts, account statements – both foreign and domestic, and any other records reflecting the receipt, deposit, or transfer of money;

    d.  United States currency, foreign currency, financial instruments, negotiable instruments, jewelry, precious metals, stocks, bonds, money wrappers, and receipts or documents regarding purchases of real or personal property;

    e.  Vehicle rental agreements and receipts, storage facility rental agreements, records of mail services, airline ticket receipts, bus ticket receipts, credit card receipt, hotel

receipts, travel agency vouchers, long distance telephone call records, and any other items reflecting domestic and foreign travel;

f.  Telephone bills, canceled envelopes, rental, purchase or lease agreements, identification documents, keys, records of real estate transactions, vehicle titles and registration, and vehicle maintenance records;

g.  Photographs, including still photos, negatives, slides, videotapes, and films, in particular those showing co-conspirators, criminal associates, U.S. currency, smuggled aliens, real and personal property, firearms, or controlled substances;

h.  Firearms, ammunition, magazines, cases, boxes, holsters, slings, gun pieces, gun cleaning items or kits, ammunition belts, original box packaging, targets, expended pieces of lead, and records, receipts, or other paperwork showing the purchase, storage, disposition, or dominion and control over firearms and ammunition.

i.  Electronic equipment, including cellular telephones, computers, disks, thumb drives, security cameras, drones , and any media storage device, GPS devices and their memory, flash drives, sim cards, and related manuals used to generate, transfer, count, record or store the information described in this attachment.

j.  Records evidencing ownership or use of cellular telephones, including sales receipts, pre-paid minute cards, registration records, and records for payment for internet access.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>One Black in color Sentry Safe lock box | Case No. 24 - 2303 MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 8USC1324(a)(1)(A)(v)(I) | Conspiracy to Harbor Illegal Aliens |

The application is based on these facts:

### See attached Affidavit of Border Patrol Agent Victor Hernandez

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Arellano Edwards

ROSS ARELLANO EDWARDS   Digitally signed by ROSS ARELLANO EDWARDS   Date: 2024.09.23 09:35:53 -07'00'

_____
*Applicant's Signature*

Border Patrol Agent -Intelligence Victor H. Hernandez
*Printed name and title*

Sworn to telephonically.

Date: ___9\23\2024___

_____
*Judge's signature*

City and state: Yuma, Arizona

Honorable James F. Metcalf, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

*Sentry Safe to be searched*

A black in color Sentry Safe was found on the premises with a nexus to the property at 269 S 16th Avenue, Yuma, Arizona 85364 (32.72254, -114.63916 during search warrant (24-5321MB). The exterior of the Sentry Safe locked box is colored in black, access keypad in the front with a latch black in color.



# ATTACHMENT B

*Property to be seized*

1.      Any content inside the black Sentry Safe and anything that relates to violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii), including alien smuggling activity, and other communications and connections of other illicit activity. Individuals involved in illicit activity use these locked boxes/safes to conceal important information to include;

  a.  Books, records, receipts, notes, ledgers, invoices, and any other documentation related to alien smuggling transactions and activities including, but not limited to, documentary records and ledgers, customer lists, financial statements, real estate documents, and other evidence of financial transactions relating to obtaining, transferring, secreting or spending various sums of money made from engaging in alien smuggling and other illicit activities;

  b.  Maps reflecting smuggling routes, foreign fuel receipts, receipts reflecting travel to and from foreign countries, receipts pertaining to the purchase and registration of vehicles, receipts for modifications and repairs done to vehicle, and receipts for the purchase of portable radios, cellular phones, pagers, and firearms;

  c.  Records relating to the receipt, transportation, deposit, transfer, or distribution of money, including but not limited to, direct deposit confirmations, wire transfers, money orders, cashier's checks, check stubs, PayPal or other electronic money transfer services including, but not limited to, MoneyGram, MoneyPak, Green Dot, and Vanilla Reload, check or money order purchase receipts, account statements – both foreign and domestic, and any other records reflecting the receipt, deposit, or transfer of money;

  d.  United States currency, foreign currency, financial instruments, negotiable instruments, jewelry, precious metals, stocks, bonds, money wrappers, and receipts or documents regarding purchases of real or personal property;

  e.  Vehicle rental agreements and receipts, storage facility rental agreements, records of mail services, airline ticket receipts, bus ticket receipts, credit card receipt, hotel

      receipts, travel agency vouchers, long distance telephone call records, and any other items reflecting domestic and foreign travel;

f. Telephone bills, canceled envelopes, rental, purchase or lease agreements, identification documents, keys, records of real estate transactions, vehicle titles and registration, and vehicle maintenance records;

g. Photographs, including still photos, negatives, slides, videotapes, and films, in particular those showing co-conspirators, criminal associates, U.S. currency, smuggled aliens, real and personal property, firearms, or controlled substances;

h. Firearms, ammunition, magazines, cases, boxes, holsters, slings, gun pieces, gun cleaning items or kits, ammunition belts, original box packaging, targets, expended pieces of lead, and records, receipts, or other paperwork showing the purchase, storage, disposition, or dominion and control over firearms and ammunition.

i. Electronic equipment, including cellular telephones, computers, disks, thumb drives, security cameras, drones , and any media storage device, GPS devices and their memory, flash drives, sim cards, and related manuals used to generate, transfer, count, record or store the information described in this attachment.

j. Records evidencing ownership or use of cellular telephones, including sales receipts, pre-paid minute cards, registration records, and records for payment for internet access.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Victor H. Hernandez, a Border Patrol Agent- Intelligence of the United States Border Patrol, being duly sworn, does depose and state the following:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.      Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the Sentry Safe found at the subjects premises 269 South 16th Avenue, Yuma, Arizona 85364 (32.72254, -114.63916) during a search warrant (Case No. 24-5321MB) executed on September 4, 2024, as further described in Attachment A, in order to search for and seize the items outlined in Attachment B, which represent evidence, fruits, and/or instrumentalities of the criminal violations further described below.

2.      I am a BPA-I with Department of Homeland Security/Office of Border Patrol (DHS/OBP), Yuma Sector Intelligence Unit. I have been a BPA since August 20,2014, and currently serve as an Intelligence Agent with Yuma Sector Intelligence Unit.

3.      In August of 2014, I completed the BPA Basic Training and basic law enforcement training at the Federal Law Enforcement Training Center in Artesia, New Mexico. I was previously assigned to the Border Patrol Station in Wellton, Arizona. As a current member of the Yuma Sector Intelligence, Anti-Smuggling Unit (ASU), I gained much experience in the operations of various illicit smuggling organizations that are operating withing the Yuma sector area of operations. I have been exposed to casework involving both alien and drug smuggling cases, along with the legal guidelines associated with this line of work. I have also gathered and interpreted criminal records, interviewed multiple principals and material witnesses, and properly executed the dissemination of information through the proper channels.

4.      By virtue of my duties as an Intelligence Agent, I have performed various tasks that include, but are not limited to: (a) functioning as a surveillance agent, thus observing and recording movements of persons performing criminal acts, and those suspected of performing criminal acts; and (b) interviewing witnesses, cooperating sources and sources of information relative to the smuggling of aliens and the distribution of monies and assets derived from the smuggling of aliens (to include the laundering of alien smuggling proceeds).

5.      While conducting alien smuggling investigations, I have personally interviewed persons involved in the smuggling of aliens. I have consulted with other experienced investigators concerning the practices of alien smugglers and the best methods of investigating them. This Affidavit contains facts based both on my personal knowledge, and on information that I have obtained by conferring with other special agents and law enforcement officials involved in this investigation.

6.      Through training and experience, Your Affiant knows that alien smugglers commonly use cellular telephones, and other communication devices, to communicate with their associates and to facilitate the transportation and housing of persons illegally present in the United States. These communication devices contain electronically stored data, including, but not limited to, contact names and numbers of alien smugglers associates, call details including call and text messages history, email messages, text messages, images related to the alien smuggling activities, all of which can be used to identify and locate associates of alien smugglers, identify organizational methods of operation, and corroborate other evidence learned during the course of an investigation.

7.      The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training, and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers.

8.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all the relevant facts known to law enforcement officers.

## II.    PROBABLE CAUSE

9.      The statements contained in the affidavit are in part on information provided from my personal knowledge and/or observations and from information as derived from the personal knowledge and/or observations of other sworn law enforcement official, either directly or indirectly through their report or affidavits, surveillance conducted by law enforcement officials, analysis of public records, and analysis of financial and business documents. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all the relevant facts known to law enforcement officers.

10.     This case is part of the Yuma Sector Anti-Smuggling Unit Investigations, to disrupt the operations of the Transnational Criminal Organization (TCO) known as La Mesa Crew. La Mesa is known to operate along the Colorado River corridor between W County 8th St and W County 17th St in Somerton, Arizona (AZ). La Mesa TCO transports undocumented noncitizens (UNCs) that have illegally entered the United States (U.S.) to stash houses located in Somerton and Yuma, AZ. Once at the stash houses La Mesa arranges for the UNCs to be transported undetected past Border Patrol checkpoints to Phoenix, AZ and/or the Los Angeles greater area.

11.     On October 20, 2023, at approximately 1300 hours, Yuma Sector Intelligence Unit deployed a pole camera at 269 S 16th Ave, Yuma, AZ (hereinafter, "**Subject Premises**"). The camera was installed to observe and document plain view observations at the residence. This address has been identified has corresponding to Carlos MORENO-Serrano the La Mesa TCO main leader and known as "Billy." Public records

show that Subject Premises is owned by Jesus Vasquez and Anna Luz Serrano (mother). Subject Premises was purchased in December of 2021 for $185,700 and only $167,130 was financed. For reference down below a picture of Carlos "Billy" Moreno Serrano.

12.    Throughout the investigation we have seen current members of the organization enter and exit the **Subject Premises.** In my experience this is a common tactic by human smuggling organizations to meet and plan illicit activities. These subjects have been previously arrested for human and weapon smuggling. The subjects operating for this organization have been identified as Carlos Moreno, Xasiel Noriega, Joshua Leon Fuentes, Arturo Salcido, Antonio Aparicio, Crystobal Figueroa, and Angel Josue Rodriguez. All subjects are currently pending indictments for human smuggling.

13.    During surveillance at the **Subject Premises,** we have observed Crystobal Figueroa a human smuggler, enter the property and exit the property with a rifle. On previous smuggling event interviews, it has been noted that Carlos's "Billy" Moreno is a powerful person that has many weapons at the **Subject Premises.** The weapons have been described as exotic weapons (Meaning customized), and that he also has a 50-caliber weapon at the **Subject Premises.**

14.    During the investigation we found evidence on multiple phone extractions linked to human smuggling that La Mesa TCO utilizes air counter surveillance (Drones) against law enforcement while conducting illicit activities. At the **Subject Premises** it was discovered through surveillance, that Carlos' "Billy" Moreno and Angel Josue Rodriguez were flying a drone in front of the property. Through the surveillance you could see Carlos' "Billy" Moreno teaching Angel Josue Rodriguez how to fly the drone. This address is located approximately four miles east of the United States/Mexico border. It is unknown what type of drone it is or its capabilities.

15.    Through surveillance we have identified vehicles that had been seen scouting (Lookout for Law Enforcement presence while conducting illicit activities) at the **Subject Premises.** One of the vehicles seen at the **Subject Premises** is a white Dodge Challenger Hellcat with Arizona License Plate 3RA1CP, cold plated (License plate does not belong to the vehicle), driven by Arturo Salcido. There was another white Dodge Challenger bearing Arizona License Plate S7A5R at the property and is associated to Xasiel Noriega. The black Dodge Ram 1500 TRX, belongs to Carlos' "Billy" Moreno who has utilized his truck to scout near the United States/ Mexico border boundaries.

16.    The investigation led the agents to 269 South 16th Avenue, Yuma, Arizona 85364 (32.72254, -114.63916) as the **Subject Premises** Head Quarters of operations for La Mesa Crew.

17.     On Tuesday, September 3, 2024, U.S. Magistrate issued a federal arrest warrant for 15 La Mesa TCO members for human smuggling, along with a search warrant (Case No. 24-5321MB) for Carlos "Billy" MORENO residence at 269 South 16th Avenue, Yuma, Arizona 85364.

18.     In addition, a U.S. Magistrate issued an arrest warrant for Carlos "Billy" Moreno-Serano (Arrest warrant # CR-23-1676-PHX-KML). As a result, Moreno was arrested on September 4, 2024, at approximately 1240 hours at the intersection of 3rd Street and 22nd Avenue in Yuma, Arizona.

19.     On September 4, 2024, at approximately 1630 hours the Yuma Anti-Smuggling Unit (ASU), in a joint operation consisting of the Yuma Sector (YUM) Special Operations Detachment (SOD), YUM Sector Intelligence Unit (SIU), YUM Small Unmanned Aircraft systems (SUAS), Yuma Sector Mobile Response Team (MRT), Yuma Station Field Intelligence Team (FIT), and air support from the Air and Marine Operations Yuma Air Branch (AMO) of Customs and Border Protection (CBP) conducted surveillance and executed the search warrant (24-5321MB) at 269 South 16th Avenue, Yuma, Arizona 85364.

20.     While inside the residence, agents noted and seized a Sentry Safe locked box. In previous experiences, subjects are known to store and lock valuable items in locked Safe's to include ledgers, guns, ammunition, narcotics, money, and other illicit items. Therefore, I seek this warrant out of an abundance of caution to be certain that an examination of the Sentry Safe will comply with the Fourth Amendment and other applicable laws.

21.     The subjects Sentry Safe lock box is currently in storage at the Yuma Border Patrol Station at 4151 S Avenue A, Yuma, AZ 85365.  In my training and experience, I know that the subjects Sentry Safe lock box has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT'S lock box first came into the possession of the United States Border Patrol.

### III.   ITEMS TO BE SEIZED

22.     Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in **Attachment B** will be found in the Sentry Safe locked box.

23.     Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

a.     That human smugglers keep records of smuggling transactions and activities within their residences or within ready access, such as in offices or storage areas, and conceal such items from law enforcement authorities; also, that aliens may be moved and transported, but documentary records and ledgers remain secured or in a locked box/safe;

b.      That human smugglers maintain various amounts of currency in their residences in a locked box/safe in order to finance their ongoing illegal activities and other businesses, as well as using the currency to pay transporters, bills, acquire assets and make purchases;

c.      That it is common knowledge that human smuggling transaction records, customer lists, financial statements, real estate documents and other evidence of financial transactions relating to obtaining, transferring, secreting or spending various sums of money made from engaging in human smuggling activities are often contained locked and secured in a locked box/safe;

d.      That human smugglers often amass large proceeds and have bank accounts, records and receipts, vehicle rental agreements for storage facilities, records of mail services, and that such items are secured within their residences and stored in locked box/safe with limited access;

e.      That human smugglers engage in interstate and foreign travel to transport UNCs and their smuggling proceeds. Evidence of such travel is often locked in a safe or locked box, airline ticket receipts, vehicle rental receipts, credit card receipts, hotel receipts, travel agency vouchers, records of long-distance telephone calls and other items reflecting domestic and foreign travel;

f.      That human smugglers and their associates who smuggle UNCs into the United States will have maps showing smuggling routes, foreign fuel receipts, receipts showing travels to source countries, receipts pertaining to the purchase and registration of load vehicles, receipts showing modifications and repairs of vehicles, receipts showing the purchase of items commonly used by smugglers such as portable radios, cellular phones, pagers, firearms and other equipment used for transporting large numbers of UNCs. These individuals will also possess these purchased items at their residences in storage, lockers or locked box/safe;

g.      That human smugglers and their associates who smuggle UNCs into the United States use multiple cellular telephones stored in a locked box/safe to further their smuggling operation to include arrangement of pickups, drop-offs, coordination of load drivers and payment of smuggling fees.

> h.     That individuals in or about the premises to be searched often attempt to conceal property subject to seizure on their persons, in attached and unattached buildings and shelters, and vehicles in locked box/safe; and
>
> i.     That human smugglers display and use loaded firearms for security during smuggling operations to safeguard, maintain and control their illegal smuggling activities.

24.     In addition to items which may constitute evidence, fruits and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the Sentry Safe locked box, including rent receipts, utility bills, telephone bills, addressed mail, personal identification, keys, purchase receipts, sale receipts, photographs, vehicle pink slips, and vehicle registration.

## IV.     DIGITAL EVIDENCE STORED WITHIN ELECTRONIC STORAGE MEDIA

25.     As described in Attachment B, this application seeks permission to search for records that might be found in the Sentry Safe locked box, in whatever form they are found, including data stored on a computer, cellular telephone, tablet, or other media storage device, such as a thumb drive, CD-ROM, DVD, Blu Ray disk, memory card, or SIM card (hereafter collectively referred to as "electronic storage media"). Thus, the warrant applied for would authorize the seizure of all electronic storage media found in or on the Sentry Safe and, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

26.     *Probable cause.* Your Affiant submits that if electronic storage media are found in the Sentry Safe, there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on such media, for at least the following reasons:

> a.     Your Affiant knows that when an individual uses certain electronic storage media, the electronic storage media may serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic storage media is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic storage media is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that electronic storage media used to commit a crime of this type may contain: data that is evidence of how the electronic storage media was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.
>
> b.     Based on my knowledge, training, and experience, your Affiant knows that electronic storage media contain electronically stored data, including, but not limited to, records

related to communications made to or from the electronic storage media, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

    c. Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto an electronic storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on an electronic storage medium, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    d. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the electronic storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    e. As previously set forth in this Affidavit and based on your Affiant's training and experience, the targets of this investigation will have to communicate telephonically or through the use of communications applications on their mobile devices or other computer equipment to coordinate with smuggling coordinators in Mexico, guides that lead the UNCs through the desert to their pickup locations, stash house coordinators, and other drivers involved in the smuggling operations. The communication over these devices will be instrumental in facilitating this criminal activity. Therefore, your Affiant believes that evidence of criminal activity will be found on any electronic storage media found at the **Subject Premises** and that the electronic storage media constitute instrumentalities of the criminal activity.

27. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the electronic storage media were used, the purpose of their

use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be found on any electronic storage media located in or on the **Subject Premises** because:

        a.      Data on a storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

        b.      As explained herein, information stored within electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating, or exculpating the owner. Further, activity on an electronic storage medium can indicate how and when the storage medium was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of electronic storage media access, use, and events relating to the crime

under investigation. Additionally, some information stored within electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on an electronic storage medium may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the existence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera) not previously identified. The geographic and timeline information described herein may either inculpate or exculpate the user of the electronic storage medium. Last, information stored within an electronic storage medium may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

        c.      A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

        d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on an electronic storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, electronic storage medium evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one electronic storage medium is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

        e.      Further, in finding evidence of how an electronic storage medium was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

28.    *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on electronic storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

        a.    *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine electronic storage media to obtain evidence. Electronic storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

        b.    *Technical requirements.* Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the electronic storage media off-site and reviewing it in a controlled environment allows for a thorough examination with the proper tools and knowledge.

        c.    *Variety of forms of electronic media.* Records sought under this warrant could be stored in a variety of electronic storage media formats that may require off-site reviewing with specialized forensic tools.

29.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit seizing, imaging, or otherwise copying electronic storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including

but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

/ / /

/ / /

/ / /

## V.   **CONCLUSION**

30.     Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence, fruits, and/or instrumentalities of violations of Title 8, United States Code, Section 1324(a)(1)(A)--Bringing in, Transporting, and Harboring Certain Aliens are likely to be found at the **Subject Premises** which is further described in Attachment A.

Victor H. Hernandez
Border Patrol Agent – Intelligence

Sworn to telephonically this 23rd day of September, 2024.

HONORABLE JAMES F. METCALF
United States Magistrate Judge